**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| ENERQUEST OIL & GAS, LLC and | § | |
| CHIEFTAIN ENERGY LLC, | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | |
| | § | |
| PLAINS EXPLORATION & | § | |
| PRODUCTION COMPANY, EOG | § | Civil Action No. SA-12-CA-00542-DAE |
| RESOURCES, INC., DENIS BRYSCH, | § | |
| RACHEL BRYSCH, LISA ANN LABUS, | § | |
| KEVIN V. LABUS, KAREN S. BRYSCH, | § | |
| LEONARD MOY, JR., EDWIN MOY, | § | |
| DIANE PAPE, LEROY MOY, and | § | |
| ADELENE MANKA, | § | |
| Defendants. | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANT EOG RESOURCES, INC.'S MOTION
FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' SEISMIC CLAIMS**

TO THE HONORABLE JUDGE OF THIS COURT:

Plaintiffs, EnerQuest Oil & Gas, LLC ("EnerQuest") and Chieftain Energy LLC ("Chieftain"), collectively referred to as "Plaintiffs," file this response opposing in large part the motion for partial summary judgment (Document 125) filed by Defendant EOG Resources, Inc. ("EOG").

**I.
INTRODUCTION**

Plaintiffs' currently filed complaint, their second amended complaint (Document 66), contains two groups of claims. The first pertain to two oil and gas leases that were granted to Plaintiffs ("the Leases") and competing leases ("the Dan Hughes Leases") that the individual (non-entity) Defendants originally granted to Dan A. Hughes Company, L.P. ("Hughes") covering the same property but owned in undivided one-half interests by Hughes and EOG. The

second group of claims pertains to an unauthorized seismic survey that was performed by EOG and Hughes, on the lands covered by the Leases and by other leases owned by Plaintiffs. In this group of claims ("the Seismic Claims"), Plaintiffs seek the recovery of damages for trespass or assumpsit and other relief regarding the seismic data. Both Plaintiffs' Seismic Claims and their Lease Claims arise from the same transaction – an agreement between EOG and Hughes ("the EOG-Hughes Agreement") pertaining to (1) the performance of seismic operations and ownership of the seismic data and (2) lease acquisition and ownership of leases, including the Dan Hughes Leases.[1]

EOG does not dispute that it lacked Plaintiffs' consent and thus trespassed on their leases on which EOG conducted unauthorized seismic operations. Instead, EOG, in its motion for partial summary judgment, contends that the Seismic Claims are barred by the two-year limitations statute for trespass to land. However, because Plaintiffs' Seismic Claims, added in their second amended complaint, arise from the same transaction as the Lease Claims, the amended complaint relates back to the date of the original complaint under Federal Rule of Civil Procedure 15(c), and there thus is no limitations bar. For this and other reasons, EOG's Motion as to limitations should be denied.

EOG also has moved for partial summary judgment on three other issues pertaining to the Seismic Claims (assumpsit damages; damages for loss of market value to the Leases; and no trespass on Plaintiffs' Moczygemba Tract leases). As to one of these issues (assumpsit damages)

---

[1] Pursuant to another subsequent agreement between Defendant Plains Exploration and Production Company ("PXP") and Hughes ("the PXP- Hughes Agreement"), Hughes assigned its fifty percent interest in the Dan Hughes Leases to PXP; and Hughes assigned its fifty percent interest in the seismic data to PXP and PXP assumed Hughes' liability for the seismic operations. Having recently learned about the latter terms of the PXP-Hughes Agreement, Plaintiffs have moved (Document 107) to add PXP as a defendant in the Seismic Claims through Plaintiffs' third amended complaint (Document 107-2).

summary judgment should be denied; as to the other two, Plaintiffs acknowledge that summary judgment is proper.

## II.
## UNDISPUTED FACTS SUPPORTING THIS RESPONSE

Plaintiffs are the holders of the Leases in Karnes County, referred to in the pleadings as the Moy and Brysch Leases. The Moy Lease is dated July 28, 2008 and the Brysch Lease is dated August 4, 2008. Exs. A, Moy Lease, and B, Brysch Lease. Each of the Leases has a two-year primary term, ending on their respective anniversary dates in 2010. *Id*. at para. 2. It is undisputed that the Leases were in effect during their primary terms.

On June 1, 2009, during the primary terms of the Leases, EOG and Hughes entered into the EOG-Hughes Agreement (formally entitled Exploration and Seismic Participation Agreement) covering a described area within Karnes County. Ex. C.  In the EOG-Hughes Agreement, EOG and Hughes agreed to participate in a seismic program within the defined area and to jointly explore for oil and gas, *Id.* at Article 1.3; to acquire leases within the defined area in which the parties would each own fifty percent, *Id.* at Article 2.1; to acquire seismic data over the defined area, *Id.* at Articles 5.1 and 5.2; to proportionately assume all liabilities arising "out of the acquisition and processing of the" data, *Id.* at Article 5.10; and to each own half of the data, *Id.* at Article 5.11.

In June 2010, in what EOG referred to as the "Typhoon Program," EOG acquired data across the Leases, during their primary terms, and other of Plaintiffs' leases. Ex. D, Nienkamp deposition, page 48, line 1 through page 49, line 22 and deposition Ex. 7. In September and October 2010, presumably relying at least in part on the unauthorized seismic data from the land covered by Plaintiffs' Leases, Hughes obtained the Dan Hughes Leases covering the same land.

Ex. E, Frye Deposition, page 60, lines 10 through 23; Exs. F through M. Pursuant to the EOG-Hughes Agreement, Hughes assigned a fifty percent interest in the Dan Hughes Leases to EOG. Ex. N, Hughes to EOG Partial Assignment.[2]

**III.**
**EVIDENCE SUPPORTING THIS RESPONSE**

Plaintiffs' evidence in support of this response is included in the Appendix filed with the response.

**IV.**
**AUTHORITIES AND ANALYSIS**

**A.**     **Plaintiffs' Seismic Claims against EOG are not time barred.**

EOG asks for partial summary judgment on Plaintiffs' Seismic Claims on the ground that those claims are barred by the Texas two-year statute applicable to trespass to real property. For several reasons, EOG is wrong.

> **1.**     **Plaintiffs' second amended complaint adding the Seismic Claims relates back to Plaintiffs' original complaint because Plaintiffs' Seismic Claims and their earlier pleaded Lease Claims arise from the same transaction – the EOG-Hughes Agreement.**

EOG acknowledges that Plaintiffs' Seismic Claims would not be barred if Plaintiffs' second amended complaint relates back to their original complaint, under Federal Rule of Civil Procedure 15(c)(1)(B), but they contend that it does not. EOG's Motion, pp. 7-9. EOG's contention is erroneous.

Rule 15(c)(1)(B) provides that an amendment to a pleading relates back to the date of the

---

[2] On November 15, 2010, PXP and Hughes entered into the PXP-Hughes Agreement (formally entitled Purchase and Sale Agreement) in which PXP acquired all of Hughes' remaining right, title, and interest in, among other assets, the Dan Hughes Leases and the EOG-Hughes Agreement. Ex. O, Article 2, and attached Schedule 6.1 (item 11). Pursuant to the PXP-Hughes Agreement, PXP acquired Hughes' one-half interest in the unauthorized seismic data and assumed all of Hughes' liabilities under the EOG-Hughes Agreement, including liabilities for the seismic program operations. *Id.* at Article 1, definition of "Assumed Buyer Obligations."

4

original pleading when "the amendment asserts a claim…that arose out of the conduct, transaction, or occurrence set out – or attempted be set out – in the original pleading…."

The Fifth Circuit Court of Appeals has emphasized that "[t]he key phrase 'conduct, transaction, or occurrence' is in the disjunctive," and thus only one of the three alternative elements must be common to the original and amended complaints. *F.D.I.C. v. Bennett*, 898 F.2d 477, 479 (5th Cir. 1990). The Fifth Circuit also has made clear that, despite the assertion of a completely new legal theory in the amended complaint, it is only necessary that the new claim "continued to arise out of the conduct, transaction, or occurrence *attempted* to be set forth in the original complaint." *Id*. at 480 (emphasis by Fifth Circuit), discussing *United States v. Johnson*, 288 F.2d 40 (5th Cir. 1961).

In addition, the words "transaction" and "occurrence" in Rule 15(c)(1)(B) should be given the same meaning that those words are given in other rules. The United States Supreme Court held that the word "transaction" in a rule governing counterclaims "is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610, 46 S. Ct. 367, 371 (1926); *see also* Fed. R. Civ. P. 20(a)(2) (providing that multiple defendants may be joined in one action if, in part, "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"); *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) (quoting *Moore* and stating that "whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, a case by case approach is generally pursued," and that "[n]o hard and fast rules have been established under the rule").

The Fifth Circuit repeatedly has held that the relation back doctrine under Rule 15(c)(1)(B) should be liberally construed and applied:

> The doctrine of relation back under Rule 15(c) is liberally applied today in the Federal Courts, especially if no disadvantage will accrue to the opposing party. 1A Barron & Holtzoff, *Federal Practice and Procedure* § 448 (Wright ed. 1960). Rule 15(c) is "based on the idea that a party who is notified of litigation concerning a given transaction or occurrence is entitled to no more protection from statutes of limitations than one who is informed of the precise legal description of the rights sought to be enforced." 3 Moore, *Federal Practice* para. 15.15[2], at 1021.

*Williams v. United States*, 405 F.2d 234, 236 (5th Cir. 1968); *see also Woods Exploration & Producing Co., Inc. v. Aluminum Co. of America*, 438 F.2d 1286, 1299 (5th Cir. 1971), *cert. denied*, 404 U.S. 1047, 92 S. Ct. 701 (1972) (quoting *Williams* for the "liberality" with which courts should approach Rule 15(c)); *Bennett*, 898 F.2d at 480 (reiterating "the importance of a liberal application of Rule 15(c)").

The Fifth Circuit long ago explained the rationale for its liberal application of Rule 15(c):

> The Rules of Civil Procedure have abandoned the term "cause of action" and substituted "claim," and they have abolished the old forms of action as separate measures of legal rights. A suit is now brought on a claim, stated in simple and nontechnical language. The suit potentially involves the whole transaction which it identifies, and is intended to reach and settle the rights which arise out of the transaction. To this end, amendment is freely allowed.

*Barthel v. Stamm*, 145 F.2d 487, 490 (5th Cir. 1944). The court further explained:

> Limitation is suspended by the filing of a suit because the suit warns the defendant to collect and preserve his evidence in reference to it. When a suit is filed in a federal court under the Rules, the defendant knows that the whole transaction described in it will be fully sifted, by amendment if need be, and that the form of the action or the relief prayed or the law relied on will not be confined to their first statement. So long as the amendment is of the sort described in [Rule 15(c)] it is within the scope of the original suit and a part of it.

*Id.* at 491; *see also Johnson*, 288 F.2d at 42 (quoting *Barthel*).[3]

The "transaction" that gives rise to and is common to both Plaintiffs' Seismic Claims and their Lease Claims against EOG is the EOG-Hughes Agreement. Pursuant to the EOG-Hughes Agreement, EOG and Hughes performed the unauthorized seismic program and acquired the unauthorized seismic data, *and* Hughes acquired the Dan Hughes Leases, *and* Hughes assigned to EOG a fifty percent interest in the Dan Hughes Leases.  Ex. C, Exploration and Seismic Participation Agreement; Ex. E, Frye Deposition, page 51, line 23 through page 52, line 17; page 60, line 10 through page 61, line 9; deposition Exs. 4 and 6; Ex. N.

When Plaintiffs filed their original complaint alleging the Lease Claims, which challenge the validity of the Dan Hughes Leases owned fifty percent by EOG, EOG was put on notice that the "whole transaction" that forms the basis for those claims – the EOG-Hughes Agreement – would be "fully sifted." *Barthel*, 288 F.2d at 42. Having been given such notice, EOG is not entitled to protection from the statute of limitations. *Williams*, 405 F.2d at 236; *Woods Exploration*, 438 F.2d at 1299-1300.[4]

### 2.   Under the discovery rule inherent in actions for injury to land, limitations does not bar Plaintiffs' Seismic Claims.

EOG argues that there is an absolute two-year statute of limitations for trespass for injury

---

[3] In a 1989 opinion, the Fifth Circuit stated that relation back in diversity cases in federal court is governed by federal law. *Hensgens v.  Deere & Company*, 869 F.2d 879, 880 (5th Cir. 1989). A comment to the 1991 amendment to Rule 15(c), however, states in essence that relation back is determined by whichever is more forgiving between state law or federal law. Fed. R. Civ. P. 15(c) Comm. N. to 1991 Amendment; *see Murthy v. Abbott Laboratories*, No. 4: 11-CV-105, 2011 U.S. Dist. LEXIS 129102, at *54-55 (S.D. Tex Nov. 7, 2011). Texas law may be somewhat stricter than federal law, but the "transaction" analysis should be the same as that just discussed under federal law. *Id.* *54-58; *Milestone Properties, Inc. v. Federated Metals Corp.*, 867 S.W.2d 113, 115-18 (Tex. App. – Austin 1993, no writ).

[4] As was mentioned earlier, Plaintiffs have moved to file their third amended complaint, adding PXP as a defendant in the Seismic Claims. Because the PXP-Hughes Agreement (Ex. P) gives rise to both the Lease Claims and the Seismic Claims against PXP, the third amended complaint relates back to the original complaint, and the Seismic Claims against PXP are not barred by limitations.

to property. EOG's Motion, p. 3. EOG is silent about the discovery rule "built in" to claims for injury to property under Texas law, but one of the cases it cites is not:

> Texas Courts, however, have applied a discovery rule in actions for damage to property. If the damages are permanent in nature, the action accrues, for limitation purposes, "upon discovery of the first actionable injury and not on the date when the extent of the damages to the land are fully ascertainable." *Bayouth v. Lion Oil Company,* 671 S.W.2d 867, 868 (Tex. 1984); *City of Odessa v. Bell*, 787 S.W.2d 525, 530 (Tex. App. – El Paso 1990, no writ).

*Hues v. Warren Petroleum Co.*, 814 S.W.2d 526, 529 (Tex. App. – Houston [14[th] Dist.] 1991, writ denied).  After the above-quoted statement from *Bayouth*, the Supreme Court of Texas said in *Bayouth*, "An action for permanent damages to land must be brought within two years from the time of discovery of the injury." *Bayouth*, 671 S.W.2d at 868.

The damages here are permanent. Once the seismic survey has been performed, and the potential for mineral production has been revealed, the survey cannot be "undone" or "repaired" and the production potential is permanently available.

Texas law presumes that every trespass causes some damage. *General Mills Restaurants, Inc. v. Texas Wings, Inc.,* 12 S.W.3d 827, 833 (Tex. App. – Dallas 2000, no pet.). "Even if a plaintiff fails to plead or prove that the defendant did any injury by entering plaintiff's property, the plaintiff is still entitled to nominal damages." *Id.*[5]

In this instance, Plaintiffs had no reason to suspect EOG had trespassed on the properties described in the Leases until June 2011, when Plaintiffs' President, Greg Olson, was informed by a landowner that EOG had "shot seismic over some lands EnerQuest has under lease."  Ex. P, Olson Affidavit, and Ex. N to EOG's Motion.  The argument and alleged evidence that Plaintiffs knew or should have known EOG had committed a trespass on the Leases fails as a matter of

---

[5] Plaintiffs may ultimately be required to elect between nominal damages for trespass and assumpsit damages, discussed below, but they are not required to make that election at this juncture.

law.  In paragraph 7 of its motion, EOG cites to excerpts from the deposition of David Frye, EOG's former Land Manager for its Eagle Ford Division.  EOG fails to note with particularity Mr. Frye's testimony regarding the "few people" who might have been on the properties described in the Leases during EOG's trespass:

> Q.  Would there have been 25 to a hundred people on the Brysch and Moy tracts shown on Exhibit 4 at the time some of this seismic work is being done?
>
> A.  No.  No.  I'm – I'm speaking on – on – to conduct a shoot of tens or hundreds of square – or tens of square miles it takes that kind of effort.  But, no, probably – I would just be speculating.  I can't imagine there would have been more than a few people on the – ever on that land.

Ex. E, Frye Deposition, page 162, lines 1 through 9.

Exhibit E to EOG's Motion is a January 5, 2010 e-mail from EOG contract landman Bernie Dwyer to Plaintiffs' President, Greg Olson, in which Mr. Dwyer inquires about the possibility of EOG obtaining a seismic permit over the Leases.  Attached to Mr. Dwyer's e-mail are the memoranda of the Leases recorded in the Karnes County Clerk's Office along with a plat of the properties described in the Leases.  *Id.*  It is not uncommon in the oil and gas exploration and production industry for companies to be contacted by landmen seeking seismic permits which are never executed and for which seismic data is never shot.  Ex. P, Olson Affidavit.  Mr. Dwyer's e-mail does nothing more than inform Plaintiffs that EOG was interested in possibly acquiring a seismic permit; a fact which falls far short of notice of trespass.

EOG next cites another e-mail, this time from EOG Sr. Right-of-Way Agent, Roger Motley, as evidence that Plaintiffs were on notice of EOG's trespass.  EOG's Motion at page 6 and Ex. B attached thereto.  In this e-mail, Mr. Motley responds to an earlier e-mail Greg Olson sent to EOG representative Brad Blackwood inquiring about the status of the seismic data shot pursuant to the separate Karnes 3D permit that Plaintiffs had granted to EOG on other property

of Plaintiffs. *Id.* In response to Mr. Olson's inquiry, Mr. Motley said EOG would give Plaintiffs notice when the data was available for viewing, "*per our agreement.*" *Id.* The only agreement Plaintiffs had with EOG was the previously mentioned Karnes 3D Seismic Permit over Plaintiffs' Roberts and Wischert leases. Ex. P, Olson Affidavit. Moreover, while Mr. Motley's e-mail does mention that the Typhoon and Karnes 3D programs were being shot together "as one shoot," there was nothing in Mr. Motley's message to Mr. Olson alerting Mr. Olson to the fact that Plaintiffs had leases within the boundaries of the Typhoon 3D shoot and the name "Typhoon" had no meaning to Mr. Olson.

As noted above, Plaintiffs did not learn that EOG had trespassed on the Leases until early June 2011 when a landowner informed Plaintiffs that EOG had "shot seismic over some lands EnerQuest has under lease." Ex. P, Olson Affidavit; Ex. N to EOG's Motion; Ex. Q, Dwyer to Coburn E-Mail. Even then, Plaintiffs did not know the boundaries of the so-called Typhoon seismic shoot. Ex. P, Olson Affidavit. In response to the landowner's notification, Greg Olson sent an e-mail to EOG representative Mary Nienkamp inquiring whether EOG had "shot any seismic over EnerQuest's acreage outside the acreage covered by the Agreement [the Karnes 3D Permit] between EnerQuest and EOG," which was attached to Mr. Olson's e-mail message. Ex. N to EOG's Motion. On June 29, 2011, Ms. Nienkamp responded by providing a plat depicting the southwestern boundaries of the Karnes 3D shoot (in which Plaintiffs had granted EOG a seismic permit to shoot over their leasehold) and the northeastern boundaries of the Typhoon shoot. Ex. D, Nienkamp Deposition, page 41, line 18 through page 49, line 22 and deposition Exs. 1, 6, and 7. It was not until Mr. Olson received Ms. Nienkamp's June 29, 2011 e-mail and attached plat that Plaintiffs could logically link the name "Typhoon" with a seismic shoot conducted by EOG over the properties described in the Leases. Ex. P.

For these reasons, Plaintiffs did not discover the injury until within two years of their tender for filing of their second amended complaint.

### 3. In any event, the general discovery rule applies, and limitations does not bar Plaintiffs' Seismic Claims.

EOG argues that the general discovery rule does not apply in this case. EOG's argument should be rejected.

EOG asserts that Plaintiffs' injury from the unauthorized seismic operation was not "inherently undiscoverable" by Plaintiffs, as is required for application of the general discovery rule under Texas law. EOG's Motion, pp. 3-4. EOG acknowledges that, to be "inherently undiscoverable," an injury need not be "absolutely impossible" to discover, but states that Texas courts have rejected application of the discovery rule to claims "concerning oil and gas operations," *Id.*, citing *Taub v. Houston Pipeline Company*, 75 S.W.3d 606 (Tex. App. – Texarkana 2002, pet. denied), and *HECI Exploration Company v. Neel*, 982 S.W.2d 881 (Tex. 1998).

*Taub* and *HECI*, however, illustrate why unauthorized seismic operations should not be categorized with "oil and gas operations" for purposes of the application of the discovery rule. In *Taub*, the issue was whether, *after 365 days of non-use of well sites with continually conspicuous non-operating wells, during which time well equipment was removed and wells were plugged*, the lessor-plaintiffs could have discovered this lapse in defendants' lease obligations, which caused the defendant to lose its right to enter the property and become a trespasser, and thus whether the discovery rule applied. *Taub*, 75 S.W.3d at 614, 619. In *HECI*, the issue was whether, because of relevant information publicly available at the Railroad Commission and available through inquiries with their lessee, HECI, the lessor-plaintiffs could have discovered that a neighboring oil and gas operator had overproduced, causing a permanent loss of oil and

gas reserves that HECI otherwise could have produced, and that HECI had obtained a judgment against the neighboring operator for that loss more than four years earlier, and thus whether the discovery rule applied. *HECI*, 982 S.W.2d at 884. Not surprisingly, in both cases the courts held that the discovery rule was not applicable.

By contrast, seismic surveys present distinctly different circumstances. There are no frequent, numerous, or continuing physical activities that remain visible on the surface. Ex. P, Olson Affidavit. Physical presence is brief, limited in this case to a total of four days on the 384 acres covered by the Leases, and a total of one day on the 111.5 acres covered by Plaintiffs' other leases. Ex. D, Nienkamp Deposition, page 52, line 23 through page 56, line 25 and deposition Exs. 9 and 11. During these sparse days, only "a few" people performing the seismic survey were present on the land. Ex. E, Frye Deposition, page 162, lines 1 through 9. There are no visible physical injuries to the land, as the survey is accomplished by trucks and receivers on the surface of the ground. Ex. D, Nienkamp Deposition, page 52, line 23 through page 56, line 25 and deposition Exs. 9 and 11.

In addition, there were no publicly disclosed revelations about EOG's unauthorized seismic operations, such as the numerous presumably contemporaneous newspaper articles discussed in another case cited by EOG. *Hues*, 814 S.W.2d at 528-29. There are no Railroad Commission or other public repositories or databases of seismic permits or of seismic operations. Ex. P, Olson Affidavit. To the contrary, as PXP demonstrated through its delays in complying with Plaintiffs' discovery of information establishing its seismic trespass liability in this case, companies that acquire seismic data, even if seismic operations are unauthorized, claim trade secret protection from disclosure of pertinent information. S*ee* Plaintiffs' Response to Plains Exploration & Production Company's Motion to Sever (Document 106), p. 8, n. 2.

Plaintiffs acknowledge that they have a duty to exercise reasonable diligence, but surely this does not mean Plaintiffs must post people continuously on their leases or somehow otherwise continuously conduct surveillance of the property covered by its leases. Given all of the foregoing facts about seismic operations, EOG's apparent standard far exceeds any reasonable diligence that Plaintiffs were obligated to satisfy. EOG's former Eagle Ford Division Land Manager, Mr. Frye, testified that out of the major companies involved in the South Texas Eagle Ford Shale play, EOG has the "biggest leasehold acreage position" in the play. Ex. E, Frye Deposition, page 146, lines 16 through 25.  In fact, according to its company website, in 2012 EOG owned "569,000 net acres in the Eagle Ford oil window." Ex. R at page 2.  It is a certainty that EOG does not comply with the unreasonable legal standard with which it seeks this Court to saddle Plaintiffs with regard to its own 569,000 acres of leasehold.

The discovery rule is applicable here. And for the same reasons discussed in part A.2, above, Plaintiffs did not discover the injury until within two years of their tender for filing of their second amended complaint.

4.     **The limitations period for assumpsit is four years, and Plaintiffs' second amended complaint as to assumpsit was timely filed for this additional reason.**

EOG assumes, without citation of authority, that the limitations period for Plaintiffs' assumpsit claim is two years. EOG's Motion, p. 7, paragraphs 10 and 11. This assumption is wrong.

Assumpsit presumes that the parties had an agreement in which, as applicable here, EOG is obligated to pay Plaintiffs for the value of the use of the properties to explore for oil and gas through seismic operations. For this reason, the measure of damages is the market value of this implied contractual right to such use. *Harell v. Vahlsing*, 248 S.W.2d 762, 772-73 (Tex. Civ.

App. – San Antonio 1952, writ ref'd n.r.e.); *Phillips Petroleum Co. v. Cowden*, 241 F.2d 586, 588, 592-93 (5th Cir. 1957); *see* EOG's Motion, p. 12.

The assumpsit theory therefore gives rise to a claim for debt. *Williams v. Khalaf*, 802 S.W.2d 651, 656 (Tex. 1990) ("*Assumpsit* was a contractual or quasi-contractual action involving a promise and leading to a claim of debt (but not the pure common-law action for a debt).") (emphasis by court). The statute of limitations governing debt is four years. TEX. CIV. PRAC. & REM. CODE § 16.004(a)(3). Plaintiffs' second amended complaint was filed within four years after EOG conducted the seismic operations, and the second amended complaint was timely with respect to the assumpsit claim for this additional reason.

**5.** **The limitations period for misappropriation of trade secret information is three years, and Plaintiffs' second amended complaint requesting exclusive possession of the seismic data and related injunctive relief is timely for this additional reason.**

EOG's Motion acknowledges Plaintiffs' claim for exclusive possession of the seismic information and for related injunctive relief. EOG states, however, that "[s]ince the complaint does not state a claim for misappropriation of trade secrets or any other wrong to ground the request for injunctive relief, this 'claim' must be considered as likewise arising from and tied to the alleged trespass." EOG's Motion, page 7, paragraph 10. Again, however, EOG's attempt to rely on the two-year statute of limitations for this claim is misplaced.

In paragraph 49 of the second amended complaint, at pages 16 through 17, in which Plaintiffs state that they are entitled to exclusive possession of all seismic data and related injunctive relief, Plaintiffs state as follows: "As a result of its Typhoon Program, Defendant EOG has wrongfully acquired confidential and proprietary data and information that belong

exclusively to Plaintiffs." Plaintiffs did not label this paragraph "misappropriation of trade secret information," but that is plainly the claim that they allege.

The statute of limitations governing claims for misappropriation of trade secrets is "not later than three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." TEX. CIV. PRAC. & REM. CODE § 16.010(a). Plaintiffs' second amended complaint was filed within three years after the unauthorized seismic operations, and Plaintiffs' claim for exclusive possession of the seismic data and related injunctive relief is timely for this additional reason.

**B.     Plaintiffs are entitled to recover damages under their assumpsit claim.**

Federal and state law principles governing damages evidence are identical.  Although damages evidence must be reasonably certain, a plaintiff need not prove damages with mathematical precision.  *Garriott v. NCSoft Corp.,* 661 F.3d 243, 249 (5th Cir. 2011).  Damages can be proved through inferences from the evidence.  *ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 879 (Tex. 2010).  Assumptions based in the real world can be made.  *Garriott*, 661 F.3d at 249.  And a jury is entitled to determine the damages to be awarded within a range of the damages evidence.  *Helena Chemical Co. v. Wilkins*, 47 S.W.3d 486, 505-6 (Tex. 2001); *Richter, S.A., v. Bank of America National Trust and Savings Assoc.*, 939 F.2d 1176, 1188 (5th Cir. 1991).

EOG argues that Plaintiffs have no evidence to support their claim for damages in assumpsit.  EOG's Motion at page 12.  In making this assertion, EOG ignores the testimony of its own current and former employees and its own documents.  At a cost of between $50,000 to $100,000 per square mile to acquire, seismic information is very expensive.  Ex. E, Frye Deposition, page 159, line 22 through page 161, line 5.  It is illogical to assume a company such

as EOG would spend this amount of money with no expectation of not only recouping its investment, but making a significant profit from that investment.  It is also illogical to assume EOG would not incur an additional cost for use of the properties to explore for oil and gas – small relative to the other costs – in order to acquire that significant profit.

As confirmed by EOG representative Mary Nienkamp, not every acre within a proposed seismic shoot is subject to an oil and gas lease and, in the absence of a lease, the company interested in acquiring seismic data must acquire permits from the owners of both the surface and mineral estates.  Ex. D, Nienkamp Deposition, page 16, line 7 through page 18, line 2. In other words, not every right to acquire seismic data is found in an oil and gas lease or coupled with an option for the parties to enter into an oil and gas lease.  For example, EOG sold some oil and gas leasehold acreage within the boundaries of its Typhoon shoot to Hunt Oil Company.  *Id.* at page 77, line 6 through page 78, line 5 and deposition Ex. 16.  Later, in February 2011, EOG entered into an agreement by which Hunt Oil Company was entitled to buy a license for EOG's seismic data under the leasehold Hunt acquired from EOG at the rate of $10,000.00 per square mile plus $6,500.00 for the data itself and the loading of the data onto its computer system.  *Id.*  This transaction is evidence of the "right of exploration alone," unattached to a lease or option to lease and thus distinguishes the facts of this case from those discussed in *Gulf Coast Real Estate Auction Co., Inc. v. Chevron Indus., Inc.*, 665 F.2d 574, 576 (5th Cir. 1982).

In addition, Plaintiffs' seismic permit agreement with Seitel Data, Ltd., attached as Ex. G to EOG's Motion, covers the property described in the Leases and allows Plaintiffs to purchase the seismic data, unrelated to any lease or option to lease, for $15,000.00 per mile.  This

transaction is also evidence of the value of the right to explore unrelated to any other right and supports Plaintiffs' assumpsit damages.[6]

The reality of the oil and gas exploration business is that, in most situations, the "right to explore" has no value apart from other leasehold rights.  Ex. P.  In this instance, both *Gulf Coast* and *Phillips v. Cowden* authorize recovery.  *Gulf Coast*, 665 F.2d at 576; *Phillips Petroleum Co. v. Cowden*, 241 F.2d 586 (5th Cir. 1957).  Thus, the lower end of the range of Plaintiffs' damages is established by the Hunt and Seitel transactions described above, while the upper end is represented by the $20,000.00 per acre price established by EnerQuest's Paloma transaction.

Former EOG Eagle Ford Land Manager Frye's testimony regarding the cost to EOG of acquiring seismic data, which testimony did not mention a coupled lease or option to lease, as well as the Hunt and Seitel seismic permits which both involved acreage already under lease and therefore by definition did not involve a coupled lease or option to lease and finally, the Paloma transaction, all stand to set the range of Plaintiffs' damages in assumpsit.

**C.    Plaintiffs acknowledge that they seek no damages for market loss to the Leases and that EOG did not perform seismic operations on Plaintiffs' Leases within the Moczygemba Tract.**

EOG seeks partial summary judgment determining that Plaintiffs are not claiming damages measured by a loss in market value of the Leases. EOG's Motion, pages 16-18. Plaintiffs acknowledge that they are not asking for a recovery based on that measure of damages.

EOG also seeks partial summary judgment on the ground that it did not conduct seismic operations on Plaintiffs' Leases within the Moczygemba Tract. EOG's Motion, pages 18-19. During discovery, Plaintiffs learned that EOG did not perform seismic operations on that tract.

---

[6] EOG's arguments about the leaseholders having been paid no money in the Hunt and Seitel transactions are of no moment. EOG's Motion, pages 15-16.  The issue is the value of the use of the properties for oil and gas exploration, and these transactions are some evidence of that value, segregated from other leasehold rights.

Plaintiffs acknowledge that EOG is entitled to a take nothing judgment on the Seismic Claims with respect to Plaintiffs' Leases in the Moczygemba Tract.

**V.**

**REQUEST FOR RELIEF**

Plaintiffs request that, except as to the issues of damages measured by a market loss in the value of the  Leases and the absence of a trespass on Plaintiffs' Leases in the Moczygemba Tract, Defendant EOG Resources, Inc.'s motion for partial summary judgment on Plaintiffs' Seismic Claims be denied and that Plaintiffs be granted such other and further relief to which they are entitled.

Respectfully submitted,

Jackson, Sjoberg, McCarthy & Townsend, LLP
711 W. 7th Street
Austin TX  78701
(512) 472-7600
(512) 225-5565  FAX

By:___/s/ John Matthew Sjoberg____
John Matthew Sjoberg
State Bar No. 18451480
msjoberg@jacksonsjoberg.com

David E. Jackson
State Bar No. 10458500
djackson@jacksonsjoberg.com
(admitted *pro hac vice*)

ATTORNEYS FOR PLAINTIFFS
ENERQUEST OIL & GAS, LLC AND
CHIEFTAIN ENERGY LLC

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 26, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  Notification to the parties of the suit were made as noted below:

McELROY, SULLIVAN & MILLER, LLP
Michael E. McElroy
1201 Spyglass Dr., Ste. 200
P.O. Box 12127
Austin, TX 78711
Tel.: (512) 327-8111
Fax: (512) 327-6566
Attorneys for Defendant Plains Exploration & Production Company
**Via CM/ECF System**

McGINNIS, LOCHRIDGE, & KILGORE, LLP
Patton G. Lochridge
600 Congress Ave., Ste. 2100
Austin, TX 78701
Tel.: (512) 495-6000
Fax: (512) 495-6093
Attorneys for Defendant EOG Resources, Inc.
**Via CM/ECF System**

WALKER KEELING, LLP
Ronald B. Walker
120 S. Main St., Suite 500
P.O. Box 108
Victoria, TX 77902-0108
Tel: (361) 576-6800
Fax: (361) 576-6196
Attorneys for Denis Brysch, Rachel Brysch, Lisa Ann Labus, Kevin V. Labus, Karen S. Brysch, Leonard Moy, Jr., Edwin Moy, Diane Pape, Leroy Moy, and Adelene Manka
**Via CM/ECF System**

   /s/  John Matthew Sjoberg
John Matthew Sjoberg