IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ENERQUEST OIL & GAS, LLC, and | ) | SA-12-CV-542-DAE |
| CHIEFTAIN ENERGY, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PLAINS EXPLORATION & | ) | |
| PRODUCTION COMPANY, EOG | ) | |
| RESOURCES INC., DENIS BRYSCH, | ) | |
| RACHEL BRYSCH, LISA ANN | ) | |
| LABUS, KEVIN V. LABUS, KAREN S. | ) | |
| BRYSCH, LEONARD MOY JR., | ) | |
| EDWIN MOY, DIANE PAPE, LEROY | ) | |
| MOY, and ADELENE MANKA, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER DENYING MOTION FOR RECONSIDERATION

On April 16, 2014, the Court heard oral argument on a Motion for

Reconsideration filed by EnerQuest Oil & Gas, LLC ("Enerquest") and Chieftain

Energy LLC ("Chieftain") (collectively, "Plaintiffs").    ("Mot.," Dkt. # 147.)

Plaintiffs' Motion requested that this Court reconsider the portion of its November

7, 2013 Order ("Order," Dkt. # 145) determining that, as a matter of law, the

Brysch and Moy Leases are not paid-up delay rental leases.    John Matthew

Sjoberg, Esq., appeared on behalf of Plaintiffs.    Michael McElroy, Esq., appeared

on behalf of Defendant Plains Exploration & Production Company; J. Derrick

Price, Esq., appeared on behalf of Defendant EOG Resources, Inc.; and John

Bennett, Esq., and Ronald Walker, Esq., appeared on behalf of Defendants Denis

Brysch, Rachel Brysch, Lisa Ann Labus, Kevin V. Labus, Karen S. Brysch,

Leonard Moy Jr., Edwin Moy, Diane Pape, Leroy Moy, and Adelene Manka

(collectively, the "Mineral Owners").    After careful consideration of the

memoranda and exhibits in support of and in opposition to the motions, and in light

of the Parties' arguments at the hearing, the Court, for the reasons that follow,

**DENIES** Plaintiffs' Motion.

## BACKGROUND

In 2008, EnerQuest[1] acquired two oil, gas, and mineral leases in

Karnes County, Texas (collectively, the "Leases").    These lands are owned by

Defendants the Mineral Owners.    The Leases, which were identical in all relevant

respects, had two-year primary terms and could be maintained "for so long

thereafter as a covered mineral [was] produced in paying quantities" or the Leases

were "otherwise maintained in effect pursuant to [their] provisions . . . ."

(Dkt. ## 114-2, 114-3 ("Leases") ¶ 2.)

Among the provisions capable of extending the Leases in the absence

---

1  Plaintiffs EnerQuest and Chieftain are Oklahoma oil companies.    Chieftain
Energy is wholly owned by its sole member, EnerQuest.    ("SAC," Dkt. # 66
¶¶ 5-6.)

of actual production was the following "shut-in well" clause:

> [I]f, during or after the primary term one or more wells on the leased premises or lands pooled therewith are capable of producing oil and gas or other substances covered hereby in paying quantities, but such well or wells are either shut-in or production therefrom is not being sold by Lessee for a period of 90 consecutive days, then Lessee may pay shut-in royalty of one dollar per acre of land then covered by this lease, such payment to be made to Lessor on or before the end of said 90-day period and thereafter on or before each anniversary of the end of said 90-day period while the well or wells are shut-in and it shall be considered that such well is producing paying quantities for all purposes hereof during any period for which shut-in royalty is tendered; provided that if this lease is otherwise being maintained by the payment of rentals or by operations, or if a well or wells on the leased premises is producing in paying quantities, no shut-in royalty shall be due until the end of the 90-day period next following the end of the rental period or the cessation of such operations or production, as the case may be.

(Id. ¶ 3(c) (emphases added).)

Although there were a number of old wells on the leased land, none was producing at the time EnerQuest acquired the Leases in 2008.   (Dkt. # 126 Ex. G at 2–3.)   On June 2, 2010, EnerQuest ran a diagnostic test on an old oil well.   (Id. Ex. K at 10–11.)   That well was originally completed in 1961 and had been shut in by the prior operator approximately four years prior to the diagnostic test.   (Dkt. # 122 Ex. F ¶ 6.)   During the production test, the well produced about 47,000 cubic feet of gas.   (Id. Ex. F ¶ 7.)   After approximately nine hours, its pressure and flow rate dropped too low to measure.   (Dkt. # 113 Ex. I at 13.)   Once the test was completed, the well was shut in.   (Dkt. # 122 Ex. E ¶ 12.)   On

3

June 3, 2010, EnerQuest changed out the wellhead and several valves.   (Id. Ex. K at 6–7.)

Based on the results of the June 2, 2010 test, EnerQuest reclassified the old oil well as a gas well, renamed it the Brysch No. 1 Well (the "Well"), and pooled the Leases' acreage into a single gas unit.   (Dkt. # 122 Ex. C.) EnerQuest performed no additional operations on the Well before the Leases' two-year primary terms expired on July 28, 2010, and August 4, 2010. (Dkt. # 122 at 5.)

On September 10, 2010, the Brysches' attorney sent a letter to EnerQuest's president, Greg Olson, stating that the Leases had terminated. (Dkt. # 126 Ex. C at 1.)   On September 14, 2010, EnerQuest attempted to pay shut-in royalties to the Mineral Owners (Dkt. # 126 Ex. D at 1; Dkt. # 122 Ex. E ¶¶ 15–18), arguing that the Well, while not actually producing, was "capable of producing in paying quantities" within the meaning of the shut-in well provision excerpted above (Dkt. # 122 Ex. E ¶¶ 13, 20; Dkt. # 126 Ex. L at 1).

Believing that the Leases had expired,[2] the Mineral Owners signed

---

2      In April 2011, EnerQuest—still maintaining that the Leases had not expired because it had timely tendered shut-in royalties—continued to work on the Well so that gas could be marketed.   (Dkt. # 126 Ex. F at 1–2; Dkt. # 126 Ex. G at 8.)   In early July 2011, EnerQuest began producing the well using unassisted intermittent flow.   (Dkt. # 126 Ex. H at 6.)

new leases with Dan Hughes Company, L.P. ("Dan Hughes") a few weeks later. (Dkt. # 122 Exs. G–N.)   In November of 2010, Dan Hughes assigned half of its interest in the new leases to Defendant EOG Resources, Inc. ("EOG") and sold the remainder to Defendant Plains Exploration and Production Company ("PXP"). (Dkt. # 131 Exs. N–O.)

On June 1, 2012, EnerQuest and Chieftain filed this lawsuit against PXP, EOG, and the Mineral Owners, bringing claims for breach of EnerQuest's leases, trespass to try title, removal of cloud on title, and declaratory relief. (Dkt. # 1 ¶¶ 33–41.)   PXP and EOG brought counter-claims for trespass, trespass to try title, conversion, and declaratory relief (Dkt. # 32 ¶¶ 62–65; Dkt. # 33 ¶¶ 62-66); and the Mineral Owners brought counter-claims for bad-faith pooling, trespass, conversion, breach of contract, suit to quiet title, and declaratory relief (Dkt. # 31 ¶¶ 66–74).   EnerQuest later amended its complaint to include additional claims against EOG that stem from an alleged seismic trespass.   (See SAC ¶¶ 43–49.)

On November 7, 2013, this Court entered an Order that, relevant to the instant Motion for Reconsideration, granted the Mineral Owners' Motion for Partial Summary Judgment (Dkt. # 126), denied PXP's Motion for Partial Summary Judgment (Dkt. # 113), and denied EnerQuest's Motion for Partial

Summary Judgment (Dkt. # 122).[3]   The Court concluded that the Leases are not "paid-up" delay rental leases and Plaintiffs made no delay rental payment.   (Order at 41.)   Thus, the Court concluded, the Leases expired and the Mineral Owners were entitled to summary judgment.   (Id.)

On November 22, 2014, Plaintiffs filed the instant Motion for Reconsideration of the Court's Order, requesting that the Court reconsider the portion of the November 7, 2013 Order determining that, as a matter of law, the Leases are not paid-up delay rental leases.   (Mot. at 2.)

As explained in the Court's Order, the facts relevant to the instant Motion concern whether Plaintiffs timely tendered shut-in royalties in accordance with the terms of the Leases.   The issue turns upon whether the Leases were "held by rentals" such that the shut-in royalties were not due until ninety days after the end of the term that was secured by the rentals, or whether the Lease were not "held by rentals" such that the shut-in royalties were due ninety days after the date the well was shut in.   If the lease was "held by rentals," as Plaintiffs argue it was, the shut-in royalties were timely tendered within the ninety-day period following the expiration of the primary term; however, if the lease was not "held by rentals,"

---

[3]   The Order also denied PXP's Motion for Partial Summary Judgment (Dkt. # 113) and EOG's motion joining and adopting it (Dkt. # 124), granted EOG's Motion for Partial Summary Judgment on Plaintiffs' Seismic Claims (Dkt. # 125), denied as moot PXP's Motion to Sever (Dkt. # 105), and denied EnerQuest's Motion for Leave to File Third Amended Complaint (Dkt. # 107).

the shut-in royalties were due ninety days following the shut-in of the Well and were not timely tendered.   In the Court's Order that Plaintiffs now seek reconsideration of, the Court concluded the Leases were not "held by rentals," and thus, the Leases expired when Plaintiffs failed to timely tender shut-in royalties within ninety days of the Well's shut-in.

STANDARD OF REVIEW

I.   Motion for Reconsideration

Rule 54 of the Federal Rules of Civil Procedure permits courts to revise "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . before the entry of judgment."   Fed. R. Civ. P. 54(b); see eTool Dev., Inc. v. Nat'l Semiconductor Corp., 881 F. Supp. 2d 745, 748 (E.D. Tex. 2012) (holding that under Rule 54(b), a court retains the power to revise an interlocutory order before entry of a final judgment).   "Rule 54(b) authorizes a district court to reconsider and reverse its prior rulings on any interlocutory order 'for any reason it deems sufficient.'"   United States v. Renda, 709 F.3d 472, 479 (5th Cir. 2013) (quoting Saqui v. Pride Cent. Am., LLC, 595 F.3d 206, 210–11 (5th Cir. 2010)).

Although a court has broad discretion to grant a motion for reconsideration under Rule 54(b), considerations similar to those under Rule 59(e)

7

inform the court's analysis.[4]   See, e.g., Valles v. Frazier, No. SA-08-CA-501-XR, 2009 WL 4639679, at *2 (W.D. Tex. Nov. 30, 2009).   A Rule 59(e) motion to alter or to amend judgment "calls into question the correctness of a judgment."   Indep. Coca-Cola Employees' Union of Lake Charles, No. 1060 v. Coca-Cola Bottling Co. United, Inc., 114 F. App'x 137, 143 (5th Cir. 2004) (quoting Templet v. HydroChem, Inc., 367 F.3d 473, 478 (5th Cir. 2004)).   Rule 59(e) "provides relief to a party when there has been an intervening change in the controlling law."   Id. (citing Schiller v. Physicians Res. Group, Inc., 342 F.3d 563, 567–68 (5th Cir. 2003)).   Like Rule 54(b), "[a] district court has 'considerable discretion in deciding whether to grant or deny a motion to alter a judgment.'"   McGillivray v. Countrywide Home Loans, Inc., 360 F. App'x 533, 537 (5th Cir. 2010) (quoting Hale v. Townley, 45 F.3d 914, 921 (5th Cir.1995)).   To prevail on a Rule 59(e) motion, however, the movant must show at least one of the following: (1) an intervening change in controlling law; (2) new evidence not previously available; or (3) the need to correct a clear or manifest error of law of fact to prevent manifest injustice.   In re Benjamin Moore & Co., 318 F.3d 626, 629 (5th Cir. 2002).

---

[4]  Rule 59(e) requires that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."   Fed. R. Civ. P. 59(e). Here, the "judgment" (i.e., the Order) was entered on November 7, 2013, and Plaintiffs' motion for reconsideration was timely filed on November 22, 2013.

II.   <u>Summary Judgment</u>

Summary judgment is granted under Federal Rule of Civil Procedure 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a); <u>see also</u> <u>Cannata v. Catholic Diocese of Austin</u>, 700 F.3d 169, 172 (5th Cir. 2012). The main purpose of summary judgment is to dispose of factually unsupported claims and defenses.   <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323–24 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.   <u>Id.</u> at 323.   If the moving party meets this burden, the non-moving party must come forward with specific facts that establish the existence of a genuine issue for trial.   <u>ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.</u>, 699 F.3d 832, 839 (5th Cir. 2012).   In deciding whether a fact issue has been created, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."   <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000).   However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."   <u>Brown v. City of Hous.</u>, 337 F.3d 539, 541 (5th Cir. 2003).   "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"

9

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)

(quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

<u>ANALYSIS</u>

As a preliminary matter, Plaintiffs titled their Motion as "Plaintiffs'
Motion to Reconsider Summary Judgment Ruling That, as a Matter of Law, the
Brysch and Moy Leases Are Not 'Paid-Up' Leases," and ask the Court to
reconsider its ruling in that regard; however, Plaintiffs misconstrue the Court's
ruling.   The Court held that, based upon the facts of this case and the Leases'
provisions, the Leases did not provide for delay rentals (whether paid annually or
up front) and the shut-in royalties, therefore, were due at the end of the Leases'
primary terms.   (Order at 41.)   In other words, the Court did not hold that the
Leases were not "paid-up" Leases; rather, the Court held that they were indeed
"paid-up," but were not "paid-up" by the prepayment of delay rentals.   In this
case, due to the lack of a drilling/delay rental clause or any other evidence to
demonstrate that delay rentals were in fact prepaid, the Leases were "paid-up" by
the payment of a <u>bonus</u>, not delay rentals.

Plaintiffs now argue that the Court should reconsider its holding
because "paid-up" is a term of art, meaning that delay rentals have been prepaid in
all circumstances.   Plaintiffs contend that a paid-up lease can never be held by a
bonus or any other type of payment, even in the complete absence of a delay rental

10

clause.    However, for the reasons that follow, this Court cannot accept Plaintiffs'

argument that delay rentals must have been paid in this case because they are paid

in <u>all</u> cases involving a "paid-up" lease.    The Court declines to give the label of

"Paid Up" in the corner of each page the meaning Plaintiffs ask this Court to give

it and finds that the record, when viewed as a whole, supports the conclusion that

the Leases held in this case were held for their primary terms by some other

consideration (i.e., a bonus).    The Court will not imply that delay rentals were

paid simply because a lease is labeled "paid-up."    In this case, the Leases were

"paid-up" by the payment of a <u>bonus</u>, not delay rentals.

   Each of Plaintiffs' arguments as to why this Court should reconsider

its analysis and holding that the Leases are not paid-up delay rental leases as a

matter of law will be addressed in turn.

  a. <u>The Court will not consider previously asserted arguments refuting</u>
    <u>the Mineral Owners' arguments.</u>

   Plaintiffs first attempt to refute the Mineral Owners' summary

judgment arguments because "the Court's Order may have been influenced by

the . . . mistaken arguments," and dedicate approximately eight pages to reasserting

their previous arguments against the Mineral Owners.    (Mot. at 2–10.)

However, "[i]t is well settled that motions for reconsideration should not be used to

raise arguments that could, and should, have been made before entry of judgment

11

or to re-urge matters that have already been advanced by a party." Helena Labs.

Corp. v. Alpha Scientific Corp., 483 F. Supp. 2d 538, 539 (E.D. Tex. 2007) (citing

Browning v. Navarros, 894 F.2d 99, 100 (5th Cir. 1990)).

        In their July 26, 2013 Response to the Mineral Owners' Motion for

Partial Summary Judgment, Plaintiffs argued that "[b]oth the Brysch and Moy

leases are 'paid-up' leases and therefore, do not require the payment of delay

rentals to maintain either lease during their primary terms."   (Dkt. # 133 at 3.)

Plaintiffs asserted that "[u]nder a paid-up lease, the delay rentals are paid when the

lease is executed, and this single payment maintains the lease during the primary

term," (id.) and cited to various treatises to support their proposition.   (See id.

(citing Ernest E. Smith and Jacqueline Lang Weaver, Texas Law of Oil & Gas

§ 4.3[A][3] (2d ed. 2012); 3 Kuntz, A Treatise on the Law of Oil & Gas, § 28.6

(1989)).)   Plaintiffs argued that the absence of an "unless" clause (or

drilling/delay rental clause) confirmed that the Leases were "paid-up" with the

delay rentals having been "fully paid" when the Leases were executed (id. at 4),

and thus asserted that the end of the rental period referred to in the shut-in royalty

clause coincided with the end of the Leases' two-year primary terms.   (Id.)

        Now, in their Motion for Reconsideration, Plaintiffs attempt to

"refute" the Mineral Owners' arguments regarding the paid-up lease construction

because they are concerned the Court may have relied upon the Mineral Owners'

"improper arguments" in issuing its ruling.   (Mot. at 2–10.)   Plaintiffs assert that

"the Mineral Owners' arguments about paid-up leases contradict settled law, have

no support in any authority, and are unmeritorious."   (Id. at 7.)   However, this is

not a proper basis for reconsideration of the Court's Order.   Because Plaintiffs

simply re-urge matters already advanced to the Court and reassert arguments in

opposition to the Mineral Owners that were previously presented and argued in

their Response to the Mineral Owners' Motion for Partial Summary Judgment,

those arguments are not proper in a motion for reconsideration.   Helena Labs.

Corp., 483 F. Supp. 2d at 539 ("A motion for reconsideration is not 'the proper

vehicle for rehashing old arguments or advancing legal theories that could have

been presented earlier.'" (quoting Resolution Trust Corp. v. Holmes, 8466 F. Supp.

1310, 1316 (S.D. Tex. 1994))).

> b.   The Court's Order does not disregard the "paid-up" characteristics of the Leases, nor does it transform paid-up delay rental into bonus.

Next, Plaintiffs argue that the Court's Order "disregards the now

common 'paid-up' characteristics of the Leases and transforms paid-up delay

rental into bonus."   (Mot. at 10.)   Plaintiffs contend that the Court has

"dismissed and disregarded the now common format and terms for paid-up leases

that are consistent with those used in the Leases."   (Id.)   Specifically, Plaintiffs

argue that the Court has "conflated a delay rental payment with a bonus payment,

based on the notion that a single payment made at the inception of the Lease is entirely comprised of a bonus, even if part of the payment is included to delay a drilling obligation during the primary term—the very function of a delay rental payment, but not a bonus payment."   (Id. at 10–11.)   In support of this argument, Plaintiffs cite multiple treatises and form leases for the proposition that paid-up leases commonly contain no provisions concerning the payment of delay rentals. (Id. at 11 ("As Smith and Weaver and other authorities make clear, however, paid-up leases commonly contain no provisions concerning the payment of delay rentals, because the lessee makes the delay rental payment when the lease is executed.").)   Plaintiffs contend that because the language of the treatises and form leases conform to the language of the Leases "in that they eliminate the delay rental payment clause" (Id. at 12), the treatises and form leases demonstrate that the Leases are paid-up delay rental leases and the "paid-up nature of the Leases attempted to be achieved should be given effect."   (Id.)   However, Plaintiffs' arguments fail because while the Leases may lack a delay rental clause and, thus, be similar to form leases in that regard, the form leases contain other provisions that indicate that delay rentals have in fact been prepaid.   Here, the Leases do not contain the same.

Plaintiffs first direct the Court to a paid-up lease form published by West that does not contain any provision for the payment of delay rentals, arguing

that the Leases in question substantially comply with the suggested form due to the

lack of a delay rental provision.   <u>See</u> 28A <u>West's Legal Forms, Specialized Forms</u>

§ 22:37 Oil and gas lease—Paid-up—Another form; (Mot. Ex. E-1.)    While the

Leases and this particular form certainly have similarities, the form differs from the

Leases in question by its inclusion of an important provision:

> 4. <u>This is a paid-up lease, and Lessee shall not be obligated</u> during the
> primary term hereof to commence or continue any operations of
> whatsoever character or <u>to make any payments hereunder in order to</u>
> <u>maintain this Lease</u> in force during the primary term . . . .

(<u>Id.</u>) (emphases added).

Thus, while this particular West form, like the Leases, contains no

delay rental clause, the form has additional language to indicate that it is in fact a

paid-up lease that requires "no <u>payments</u> hereunder in order to maintain this Lease

in force during the primary term."[5]   (<u>Id.</u>) (emphasis added).    As discussed in the

Court's Order, in most cases the exact form of "payment" makes no difference;

here, however, it is critical.[6]    Therefore, the Court finds that this particular West

---

[5]    The Court also finds it particularly important that like the Leases in question,
this form makes no distinction as to what form of "payment" that is.   In fact, the
title of the form is "Oil and gas lease—Paid-Up—Another form."   The form is not
categorized as a "paid-up delay rental" form and makes no reference to "rentals" in
any provision whatsoever.

[6]    If the "payment" holding the Leases was in fact a delay rental, Plaintiffs
argue they had ninety days following the expiration of the primary term (or "rental
period") in which to tender shut-in royalties therefore rendering their September
14, 2010 shut-in royalty payment timely.

form relied upon by Plaintiffs in support of their argument that paid-up delay rental

leases commonly have no mention of delay rentals at all, actually supports the

Court's ruling that paid-up leases are not always paid-up by delay rentals, but can

also be paid-up by additional "payments," including, for example, a bonus as in

this case.   To highlight this distinction, the Court will analyze the additional

forms relied upon by Plaintiffs.

One of the form leases from West, entitled "Oil, gas and mineral

lease—Paid-up form—With pooling provision—Modern Form," is attached to

Plaintiffs' Motion for Reconsideration.   (See Mot. Ex. E-2.)   Plaintiffs cite to

this form, arguing that the Leases "conform" to West's form lease that Plaintiffs

characterize as a "model paid-up delay rental form[] that eliminates a delay rental

clause."   (Mot. at 11–12.)   This form includes the following language:

> 2. Term of Lease.   This lease, which is a "paid-up" lease requiring no
> rentals, shall be in force for a primary term of [identification of years]
> years from the dates hereof . . . .
>
> 3. Royalty Payment. Royalties on oil, gas and other substances
> produced and saved hereunder shall be paid by lessee to lessor . . . If
> at the end of the primary term or any time thereafter one or more wells
> on the leases premises or lands pooled or unitized therewith are
> capable of producing oil or gas or other substances covered hereby in
> paying quantities, but such well or wells are either shut in or
> production therefrom is not being sold by lessee, . . . then lessee shall
> pay an aggregate shut-in royalty of $1 per acre . . . on or before the
> end of said []-day period while the well or wells are shut in or
> production therefrom is not being sold by lessee; provided that if this
> lease is otherwise being maintained by operations, or if production is

> being sold by lessee from another well or wells on the leased premises . . . no shut-in royalty shall be due until the end of the []-day period next following cessation of such operations or production.

6 West's Tex. Forms, Minerals, Oil & Gas § 3:4 (4th ed.) (emphases added).

In contrast, however, the Leases state the following regarding shut-in royalties:

> provided that if this lease is otherwise being maintained by the payment of rentals or by operations, or if a well or wells on the leased premises is producing in paying quantities, no shut-in royalty shall be due until the end of the 90-day period next following the end of the rental period or the cessation of such operations or production, as the case may be.

(Leases ¶ 3(c) (emphases added).)

Given the notable differences in the language between the form lease and Plaintiffs' Leases, the form cited by Plaintiffs in actuality cuts against Plaintiffs' argument that delay rentals are always paid in a paid-up lease.   If Plaintiffs' argument that delay rentals are always prepaid in a paid-up lease were the case, then the primary term would always be the "rental period" such that shut-in royalties would never be required to be tendered until the number of days provided for in the lease after the expiration or the "rental period," or primary term.   However, the West form cited by Plaintiffs omits the "rental period" by removing the language "if otherwise being maintained by the payment of rentals" and only containing the phrase: "if otherwise being maintained by operations."   It

17

seems logical when looking at the language of the West form that because it is a paid-up lease "requiring no rentals," there would never be a "rental period," per se. Thus, it is illogical to allow Plaintiffs to rely upon a poorly-drafted lease[7] containing no language mentioning that the lease is paid-up requiring "no rentals," then utilize language in the shut-in royalties clause pertaining to a "rental period" and assert that a "rental period" exists because delay rentals have been paid because they are always prepaid in a paid-up lease.   Rather, looking to the West form that Plaintiffs have asserted is a true "paid-up" delay rental lease, it is apparent that if all delay rentals have been prepaid under the Leases such that it is "requiring no rentals" (although the Leases here do not say as much), there would never be a "rental period" provision in the shut-in royalty clause (as demonstrated by the West form).   Because the Leases do not mention anything about "requiring no rentals" or suggest the lack of a rental period as in the West form lease, the Leases do not conform to West's paid-up lease.

Plaintiffs also assert that the Court's analysis "repeatedly relies on the absence of a clause in the Leases reciting annual delay rental obligations or otherwise providing for the payment of delay rentals in support of its conclusions that the Leases are not paid-up leases."   (Mot. at 11.)   But Plaintiffs assert that

---

[7]     Indeed, Plaintiffs admit in their Motion that "some of the references to delay rentals in other clauses of the Lease could have been more carefully drafted . . . ." (Mot. at 12.)

paid-up leases commonly contain no provisions concerning the payment of delay rentals, because the lessee makes the delay rental payment when the lease is executed.   (Id.)    Thus, Plaintiffs argue that the Court improperly interpreted their Leases that provided for no delay rental clause.    However, this argument, as demonstrated by the above discussed forms (and for the additional following reasons), is incorrect.

The West form specifically pertaining to a <u>paid-up</u> <u>delay rental</u> lease contains language indicating that it is in fact paid-up by prepaid delay rentals and includes a paragraph providing for delay rentals.    West's Paid-Up <u>delay rental</u> form recommends including the following language: "Lessor acknowledges that all of the <u>delay rentals</u> required annually under Paragraph __ <u>have been prepaid</u> at the time of Lessor's execution and delivery of this lease."    28A <u>West's Legal Forms, Specialized Forms</u> § 22:87 – Paid-up delay rentals (4th ed. 2012) (emphases added).    Thus, the "Paid-up delay rental" form lease expressly provides that the delay rentals "required annually under Paragraph __" are not required, <u>because they have been paid</u>, and contemplates the <u>inclusion</u> of a delay rental paragraph. The commentary to this West paid-up delay rental form states:

> Lease forms that call for payment of delay rentals and also allow the lease to be maintained by shut-in royalty often specify that the amount of shut-in royalty is to be the same as the amount of the delay rental payment and that shut-in royalty may be paid for the lessor's account into the depository bank named for delay rental payments.   <u>If such a</u>

19

form is used, the provision of the lease for payment of delay rental
should therefore not be entirely stricken, or the result may be that the
shut-in provision is rendered ineffective or ambiguous.

Id. (emphasis added).

While Plaintiffs may be correct that paid-up leases may completely remove the delay rental clause, this West form demonstrates that, at least in some cases, the delay rental clause should be retained.   Accordingly, the West paid-up delay rental form lease disproves Plaintiffs' argument that the absence of a delay rental clause is consistent with a paid-up delay rental lease.

Additionally, West's "Oil, gas and mineral lease—Paid-up form—With pooling provision—Modern form" cited by Plaintiffs in which they direct the Court to the lack of a delay rental clause contains the following language: "[t]his lease, which is a 'paid-up' lease requiring no rentals . . . ."   6 West's Tex. Forms, Minerals, Oil & Gas § 3:4 (4th ed.) (emphasis added).   Thus, while Plaintiffs are correct that this form does not include a delay rental clause, this form specifically informs that no delay rentals are required and there is no provision for delay rentals because delay rentals have been prepaid.   Here, the Leases contain no such provision.

As these forms illustrate, the Court did not simply rely upon the lack of a delay rental clause in the Leases.   The Court recognizes that some forms of paid-up leases may not contain a delay rental clause.   See e.g., 6 West's Tex.

20

<u>Forms, Minerals, Oil & Gas</u> § 3:4 (4th ed.).    However, when comparing the

construction of the Leases here with the forms cited by Plaintiffs, it is apparent that

they differ in their provisions in important respects.    While the Leases may lack a

delay rental clause, the forms contain other provisions that, when viewed as a

whole, indicate that delay rentals have in fact been prepaid.    This is not the case

with Plaintiffs' Leases.

       The Court does not disagree with treatises stating that "a 'paid-up'

lease . . .contains no provision for the payment of delay rentals."    (Mot. at 11

(citing <u>Smith and Weaver</u> § 4.3).)    But while the Leases, like these purported

paid-up delay rental clause leases, do not contain a delay rental clause, the Court is

required to review the contract as a whole.    <u>Coker v. Coker</u>, 650 S.W.3d 391, 393

(Tex. 1983) ("[C]ourts should examine and consider <u>the entire writing</u> in an effort

to harmonize and give effect to <u>all the provisions</u> of the contract so that none will

be rendered meaningless.").    In doing so, the Court has not relied simply on the

lack of a delay rental clause, but has considered the document in its entirety and

concluded that the Leases are not paid-up <u>delay rental</u> leases.    Without any

additional provisions and/or evidence to the contrary, the Court cannot conclude

that the Leases are paid-up delay rental leases.

       Plaintiffs next argue that the Court's reasoning is "circular," in that

the Court rejects the import of the "Paid Up" statement on each page of the Leases

because the Leases purportedly do not 'acknowledge such a payment,' <u>yet the 'Paid Up' statement is such an acknowledgment</u>."   (Mot. at 13.)   The Court disagrees.   Rather, the Court finds reason to believe that Plaintiffs' argument, in fact, is circular: Plaintiffs assert that the words "Paid Up" on the top of each page are an "acknowledgment" that delay rentals were paid.   However, that would require the Court to first accept Plaintiffs' unsupported argument that "paid-up" is a "term of art" meaning that delay rentals have always been prepaid.   The Court has rejected that argument and has concluded that the term "paid-up" simply means that there are no drilling obligations in the primary term (Order at 49); this may be accomplished, with proper drafting, by the pre-payment of delay rentals, or also by some other form of consideration or payment.   <u>See</u> 28A <u>West's Legal Forms, Specialized Forms</u> § 22:37 Oil and gas lease—Paid-up—Another form (stating "[t]his is a paid-up lease, and Lessee shall not be obligated . . . to make any <u>payments</u> hereunder in order to maintain this Lease in force during the primary term" (emphasis added)).   In any event, the term "Paid Up" at the top of the page, when considered with the Leases as a whole, does not infer that delay rentals have been paid because <u>only</u> delay rentals are prepaid in any form of a paid-up lease.[8]

---

[8]     Plaintiffs take issue with the Court's statement that the drafters of the Leases could have recited in the Leases that delay rentals had been paid-up.   Plaintiffs assert that the Court, in making such a statement, ignored the fact that every page of the Leases contains the statement "Paid Up" at the top right corner.   (Mot. at

It could very well have been, as the Leases' language indicates, that the rental period was held by a bonus—not delay rentals.   In sum, despite Plaintiffs' arguments that the Leases substantially "conform" to West's form paid-up leases, an analysis reveals that they in fact contain critical differences that distinguish the Leases here from the West forms cited by Plaintiffs.

At the hearing, Plaintiffs also directed the Court to <u>Hitzelberger v. Samedan Oil Corp.</u>, 948 S.W.2d 497 (Tex. App. 1997), for the proposition that "paid-up" always means paid-up by delay rentals and the lack of a delay rental clause is indicative of a paid-up delay rental lease.   Plaintiffs argued the following language describing the lease in <u>Hitzelberger</u> supports their argument: "Paragraph 4 of the lease contains a typewritten sentence, which provides '[t]his is a paid up lease and all references to delay rentals shall be disregarded.'"   <u>Id.</u> at 504. Because the <u>Hitzelberger</u> court concluded that "[p]aragraph 4 states that delay rentals are paid-up," Plaintiffs essentially argue that this Court should hold the same regarding their Leases because their Leases likewise had no "references to delay rentals" due to striking the delay rental clause.   The Court disagrees with Plaintiffs' interpretation of <u>Hitzelberger</u>.

---

12.)   However, for the reasons stated above, the Court declines to give the meaning to the term "paid-up" that Plaintiffs assert it means; thus, the label "Paid Up" at the top of each page, without additional provisions, does not suggest that the Court presume delay rentals have been paid.

First, Plaintiffs simply lift an out-of-context sentence from a case that did not decide the issue before this Court, but instead decided whether the subject lease terminated during the primary term due to the late tender of royalty payments.    The defendant, Samedan, argued that pursuant to paragraph 4, "the paid-up nature of the lease gave Samedan an absolute and irrevocable right to the oil and gas from for the Hitzelberger's tracts for a three-year period" and, thus, Samedan "need do nothing" to keep the lease in force during the primary term, including paying royalties.   Id. at 506.   In concluding that royalties were in fact due during the primary term, the court noted that "[b]ecause [paragraph 4] certainly and definitely applies to delay rentals and not royalty payments, we will apply this unambiguous provision as written."   Id. at 506 (emphasis added).   The court noted that "the paid-up provision in the lease did not require Samedan to make delay rental payments during the primary term" (Id. at 505), but that provision did not extend to royalty payments due during the primary term because it "certainly and definitely" applied only to delay rentals.   Id. ("Samedan's interpolation that royalty payments need not be made during the primary term goes beyond the clear expressed intent of the typewritten language in Paragraph 4." (emphasis added)).

In contrast, unlike the lease in Hitzelberger, the Leases here do not "certainly and definitely" contain provisions to indicate that delay rentals have

24

been prepaid and there are none due during the primary term.    In fact, there is no provision to indicate that delay rentals were even contemplated, much less prepaid. Instead, Plaintiffs essentially argue that the words "Paid Up" at the top of each page, as a "term of art," combined with the complete lack of a delay rental clause, have the same effect as the quoted language from Hitzelberger.    The Court disagrees with Plaintiffs.

Second, the Court does not have a copy of the lease at issue in Hitzelberger and, in all likelihood, there may have been other provisions that, when taken as a whole, would indicate to the court of appeals that delay rentals have been prepaid.    Indeed, the Hitzelberger court noted that in determining the parties' intent in interpreting a lease "[n]o single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole lease."    Id. (citing Coker, 650 S.W.2d at 393) (emphasis added).    In any event, the Court disagrees that the Hitzelberger case stands for the proposition that a "paid-up" lease is always paid-up by prepaid delay rentals. Rather, the court held that based on the facts of the case and due to the language of the lease provision in Hitzelberger (language that the Court notes is not present here), delay rental payments were not required during the primary term.    This Court, however, is presented with different facts and declines to extend the Hitzelberger holding to mean what Plaintiffs argue it means—that paid-up leases

25

are always paid-up by delay rentals.

     c.    <u>The Court gave the proper weight to Plaintiffs' cited treatises.</u>

Next, Plaintiffs assert that the Smith and Weaver treatise is one of the foremost Texas oil and gas law authorities.   (Mot. at 15.)   Plaintiffs argue that the Court, in its Order, decided to give "not much" weight to the treatises cited by Plaintiffs, including the Smith and Weaver treatise.   (<u>Id.</u> at 16.)   Plaintiffs then elaborate as to the citations to such treatises and the qualifications and experience of the authors, and thus urge the Court to reconsider the weight given to the treatises.   (<u>Id.</u>)   However, Plaintiffs misconstrue the Court's consideration of the Smith and Weaver treatise—the Court did not simply give "not much" weight to the treatise, but rather stated that "with due respect to their authors, the answer <u>in light of the facts of this particular case</u> is 'not much.'"   (Order at 57 (emphasis added).)   The Court noted how for every treatise that, like the Smith and Weaver treatise, states paid-up leases involve prepaid rentals, there are others indicating that paid-up leases with no drilling clauses are maintained during the primary term by bonus payments.   (<u>Id.</u> at 57.)

Plaintiffs quote the Smith and Weaver treatise as follows:

> Called a "paid-up" lease, it contains no provision for the payment of delay rentals.   The rentals are paid when the lease is executed, and this single payment maintains the lease during the primary term.

. . . .

By paying the entire rental up-front, the lessee is relieved of the requirement of annual payments and avoids the possibility of an inadvertent loss of the lease by failure to make a timely or correct payment.

. . .

The paid-up lease is normally drafted to last for the entire primary term and no action on the part of the lessee is required to maintain it for this period.

(Mot. at 3, 11 (quoting Ernest S. Smith and Jacqueline Lang Weaver, Texas Law of Oil and Gas, § 4.3[A] (2d ed. 2012)).)

However, as the Court noted in its order, for every treatise that lends itself to Plaintiffs' argument, there are others to the contrary.   For example, one treatise states "[a] paid-up lease does not contain a drilling clause, and an additional consideration provided for in such a lease is not a delay rental."   3-28 Kuntz, Law of Oil and Gas § 28:6 (emphasis added) (citing Fuller v. Rainbow Resources, Inc., 744 S.W.2d 232, 232 (Tex. App. 1987)).   Also, another states "[i]n a 'paid up' lease, the bonus pays for a primary term lease of three years, five years, or ten years and 'so long thereafter as oil and gas is produced in paying quantities.'   During the primary term, there is then no commitment on the part of the lessee to either drill or pay delay rentals."   Owen W. Anderson, David v. Goliath: Negotiating the 'Lessor's 88' and Representing Lessors and Surface Owners in Oil and Gas Lease Plays, 27 RMMLF-INST 2 (1982) (emphasis added).

27

Another treatise provides, "most of the recent shale leases utilize an up-front, per-acre bonus payment to the landowner rather than the concept of delay rentals. The use of this type of payment arrangement is classified as a 'paid up lease.'" Baldwin's Oh. Prac. Real Est. § 47:6 (2012–13 ed.).

As the aforementioned treatises demonstrate, the Court did not decline to give weight to the Smith and Weaver treatises.    The Court is of the opinion that the authors are highly respected in the field.    However, the Court, as stated in its Order, concludes that the Smith and Weaver treatises are not controlling in this case.    As stated in the Order, and as Plaintiffs surely acknowledge, treatises are not binding on this Court and are useful only insofar as they are persuasive. When compared to the facts of this case and the language of the Leases, the treatises, while certainly insightful, are not nearly as persuasive in this particular case as Plaintiffs hold them out to be.

> d.    The summary judgment evidence supports judgment for the Mineral Owners, not Plaintiffs.

Next, Plaintiffs argue that the summary judgment evidence supports judgment for Plaintiffs, not the Mineral Owners, or at the least raises a fact issue about whether the Leases are paid-up leases.    (Mot. at 16.)    Essentially, Plaintiffs argue that the Leases themselves do not establish as a matter of law that they are not paid up leases because their format, terms, and page-by-page "Paid Up" labels

28

are consistent with the Smith and Weaver treatises defining "paid-up" delay rental leases.   (Id. at 16–17.)

However, as discussed above, (1) the format of the Leases do not "conform" to the paid-up form leases as Plaintiffs argue that they do; (2) the terms of the Leases, likewise, neither conform to the form leases nor do they logically result in the conclusion that delay rentals have been prepaid; and (3) the Court declines to give the label "Paid Up" on each page the meaning Plaintiffs urge this Court to give it—that delay rentals have been prepaid because they are always prepaid in a "paid-up" lease.

     i. Statements of Mr. Olson

Plaintiffs also argue that the statements of EnerQuest's president, Greg Olson, that Plaintiffs "paid all delay rentals to the Lessors at signing" was not a legal conclusion but was rather a statement of fact, thus arguing that the Court erred in "dismiss[ing]" his statement.   (Mot. at 17.)   The Court did not simply "dismiss" Mr. Olson's statements, but rather held that because Mr. Olson "attached no exhibits to his affidavit and did not explain why any lump-sum payment that EnerQuest made at signing should be construed as 'all delay rentals' rather than a bonus," the assertion was nothing more than a legal conclusion.   (Order at 69.) Indeed, "[u]nsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for

summary judgment." Ramon v. Continental Airlines, Inc., 153 F. App'x 257, 259 (5th Cir. 2005) (quoting Galindo v. Precision Am. Corp., 754 F.2d 1212, 1216 (5th Cir. 1985)).   Because EnerQuest presented no evidence that the payment at issue was a delay rental rather than a bonus, Mr. Olson's conclusory statement that "all delay rentals" were paid at the Leases' execution was nothing more than an unsupported legal conclusion.

ii.   Statements of Mr. Frye

Plaintiffs also take issue with the Court's interpretation of statements made by David Nichols Frye (the EOG landman), as well as statements made by Plaintiffs' counsel at the summary judgment hearing.   (Mot. at 18–19.) Specifically, Plaintiffs argue that when Mr. Frye testified that "paid-up" implies that "no rentals" were due during the primary term, he was "plainly" stating that delay rentals had been paid.   (Id. at 18.)   As quoted in the Court's Order, Mr. Frye's deposition read as follows:

> Q.   Okay.   So when -- when we're looking at these leases[9] and they're paid-up mineral leases, . . . once these leases have been signed by the landowners and Dan A. Hughes paid them whatever bonus consideration was paid, . . . Dan A. Hughes . . . doesn't have to do anything else for three years if -- if they -- if they choose not to, correct, to hold these leases?

---

[9]    EnerQuest's counsel was referring to the leases that the Mineral Owners subsequently signed with Dan A. Hughes in 2010 ("Brysch-Hughes Lease"), which are entitled "Paid-Up Oil, Gas, and Mineral Lease," not to the Leases at issue in this case, which are entitled "OIL, GAS AND MINERAL LEASE."

A.   Yes.

(Dkt. # 122 Ex. O at 69:21–70:5 (emphases added).)   Based on this, the Court concluded that EnerQuest's counsel had asked Mr. Frye whether the payment of a <u>bonus</u>—not the "prepayment of delay rentals"—maintained the Brysch-Hughes Lease during the primary term, and Mr. Frye, consistent with the above analysis, answered in the affirmative: A paid-up lease <u>is</u> one under which the lessee has paid a <u>bonus</u> for the privilege of holding the lease during its primary term—a lease with "no rentals."   (<u>See</u> Dkt. # 123 Ex. G (Brysch-Hughes Lease) ¶ 3 ("This is a PAID UP LEASE.   In consideration of the <u>cash payment</u> tendered upon execution of this lease, Lessor agrees that Lessee shall not be obligated, except as may otherwise be provided herein, to commence or continue any operations during the primary term or to make any shut in royalty payment during the primary term." (emphasis added))).

Therefore, the Court properly concluded that contrary to EnerQuest's contentions, calling a lease with no drilling/delay rental clause "paid-up" does not mean, as a matter of law, that the lessor paid "delay rentals" at execution.   In the Brysch-Hughes Lease, a <u>bonus payment</u>, not rentals, maintained the "paid-up" lease during the primary term.

At the hearing, Plaintiffs' counsel argued that the word "bonus" is

31

"shorthand" in the Texas Oil and Gas business that actually refers to the lump sum of <u>both</u> delay rentals and bonus that is paid at the signing of a lease; thus, arguing that Mr. Frye's statements that a "bonus" was paid to maintain the lease should actually be interpreted that bonus <u>and</u> delay rentals were paid because it is common to simply refer to both as a "bonus."   Plaintiffs have not asserted this argument in their Motion and, in any case, provide no evidence save for Plaintiffs' counsel's statements at the hearing to support the argument that "bonus" is actually "shorthand" for bonus plus delay rentals. Thus, the Court declines to accept Plaintiffs' argument.   Plaintiffs have provided the Court with no reason that would necessitate its reconsideration of the interpretation of Mr. Frye's statements, which are otherwise clear on their face.

   iii. <u>Plaintiffs' counsel's statements at the summary judgment hearing</u>

  As to the statements at the summary judgment hearing, Plaintiffs, in their Motion for Reconsideration, urge that the Court was "mistaken about the import of counsel for Plaintiffs' statements at the summary judgment hearing." (Mot. at 19.)   Again, the Court declines to reconsider its Order on this basis.

  Plaintiffs agree that their counsel stated that the bonus and delay rentals had been "wrapped into one payment," and they also agree that he stated that delay rentals were "deemed to have been paid" when the Leases were signed.

(Id.)   However, Plaintiffs now argue that "[n]either of these statements or others, however, extrapolate into counsel having 'admitted that the only payment made at execution was a bonus payment that allegedly had delay rentals 'wrapped in[].'" (Id. (quoting Order at 70).).   Plaintiffs misinterpret the Court's analysis of Plaintiffs' counsel's statements.

The Court, in its Order, noted that in response to the Court's inquiry as to what evidence there was that delay rentals had been paid at signing in addition to the bonus, Plaintiffs' counsel responded that there was "no distinction" between the two and also that the two had been "wrapped into one payment." (Order at 69.)   The Court then discussed his statements as they relate to Plaintiffs' failure to present any evidence that delay rentals were actually paid.   Because Plaintiffs' counsel's statements were incorrect that there is "no distinction" between a delay rental and a bonus payment, simply calling it a "delay rental" and stating that delay rentals were "deemed to have been paid," the Court determined, was insufficient.   Thus, the Court held that Plaintiffs had not provided the Court with any reason at the hearing or in their motions to conclude that the payment at issue was a delay rental rather than a bonus; Mr. Olson's statements,[10]  therefore, were unsupported legal conclusions.   (Id. at 69–70)

---

10     As stated above, Mr. Olson stated in his affidavit that Plaintiffs "paid all delay rentals to the Lessors at signing."    (Dkt. # 133 Ex. A.)

Plaintiffs' counsel's statements, as discussed more thoroughly in the Order, are simply not correct.   A delay rental is "a periodic payment made by an oil and gas lessee to postpone exploration during the primary lease term," <u>In re Estate of Slaughter</u>, 305 S.W.3d 804, 811 (Tex. App. 2010) (quoting <u>Black's Law Dictionary</u> 1411(9th ed. 2009)), while a bonus is "[a] payment that is made <u>in addition to royalties and rent</u> as an incentive for a lessor to sign an oil-and-gas lease," <u>id.</u> (emphasis added) (quoting <u>Black's Law Dictionary</u> 206 (9th ed. 2009)). The statement that there is "no distinction" between the two, accordingly, is incorrect and did not provide the Court with any evidence that delay rentals had been paid at signing in addition to the bonus to support Mr. Olson's statements. Moreover, as discussed above, the Court finds Plaintiffs' counsel's arguments that the word "bonus" is "shorthand" for the lump sum of <u>both</u> delay rentals and bonus unpersuasive.

iv.    <u>Timeliness of the Mineral Owner's delay rentals arguments</u>

In a separate argument, Plaintiffs assert that the Mineral Owners did not give Plaintiffs any indication that they would contend that the Leases were not paid-up leases or that a delay rental payment was not made until they filed their Response to Plaintiffs' Motion for Partial Summary Judgment.   (Mot. at 18).   In other words, Plaintiffs assert they had no reason to believe that these were disputed issues before the Mineral Owners filed their Response.

34

The Court is unsure how this is a point for reconsideration of its ruling.   In any case, the Mineral Owners stated in their Response to the Motion for Reconsideration that they did not raise their arguments as to whether delay rentals had been paid before their Response to Plaintiffs' summary judgment motion because the Leases did not provide for delay rentals.   ("Resp.," Dkt. # 150 ¶ 9.)   Thus, the Mineral Owners asserted they "did not see any need to argue about delay rentals until after Plaintiffs argued in their motion for partial summary judgment that the absence of a delay rental provision combined with the heading 'Paid Up' meant that delay rentals had been prepaid for the entire primary term of each lease."   (Id.)   Once the argument was made, the Mineral Owners responded.   (Id.)   A review of the filings indicates the Mineral Owners' explanation is correct.

<u>CONCLUSION</u>

Based on the foregoing, Plaintiffs' Motion for Reconsideration (Dkt. # 147) is **DENIED**.

IT IS SO ORDERED.

Dated: San Antonio, Texas, April 24, 2014.

_____
David Alan Ezra
Senior United States Distict Judge

35